UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WAYNE BOONE II,                )
                                       )
                    Petitioner,        )        Case No. 1:06-cv-445
                                       )
v.                                     )        Honorable Robert Holmes Bell
                                       )
MICHIGAN PAROLE BOARD,                 )
                                       )
                    Respondent.        )
_____)

## OPINION

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2241.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that Petitioner is not entitled to habeas corpus relief.

**Discussion**

I.       Factual Allegations

Petitioner Richard Wayne Boone II presently is incarcerated at the Boyer Road Correctional Facility.  After a guilty plea, the Wayne County Circuit Court convicted Petitioner of first-degree home invasion and armed robbery.   On May 2, 2002, Petitioner was sentenced to concurrent prison terms of four years and three months to twenty years for the first-degree home invasion conviction and four years and three months to ten years for the armed robbery conviction. In his habeas application, Petitioner contests the denial of his parole by the Michigan Parole Board.

Prior to his parole interview, Petitioner received a Michigan Department of Corrections (MDOC) Parole Guidelines Scoresheet with a score of +4, which equates to a "high probability of parole." *See* Ex. 9.  He also completed all institutional programs recommended by the MDOC, including the Custodial Maintenance and Business Education Technology Course and Assaultive Offenders Therapy; received his General Equivalency Degree and over 120 college credits; obtained excellent work reports; and failed to commit any major misconduct violations.  Yet, the parole board denied Petitioner's parole on December 1, 2005.

Petitioner first argues that the parole board denied his parole in violation of his due process rights when he received a "high probability of parole."  To deny parole to a prisoner who has a "high probability of parole," the parole board must give substantial and compelling reasons to depart from the parole guidelines. MICH. COMP. LAWS § 791.233e(6).[1]  In accordance with MICH.

---

[1]MICH. COMP. LAWS § 791.233e(6) states:

The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines.  A departure under this subsection shall be for substantial and compelling reasons stated in writing.  The parole board shall

COMP. LAWS § 791.233e(6), the parole board provided on the MDOC Parole Board Notice of Decision (Notice of Decision) that "[Petitioner] fails at interview to accept responsibility for the significant personal injury inflicted upon his victim.  He fails to show remorse or concern for his victim other than to say "it was a life changing event".  [Petitioner] needs to develop a more detailed [Relapse Prevention Plan]."  *See* Ex. 11.  Petitioner's next parole consideration date is March 18, 2007.  *Id.*

      Second, Petitioner argues that the parole board denied his parole based on inaccurate information from his August 11, 2005 MDOC Parole Eligibility/Lifer Review Report (Parole Eligibility Report) and his September 2005 MDOC Parole Guidelines Scoresheet.  *See* Exs. 5 & 9. Both documents allegedly falsely considered Petitioner's role in "watching" his co-defendant sexually assault the victim.  Ex. 18 at p. 3.  Petitioner argues that he did not know his co-defendant raped the victim because he was busy ransacking the victim's home.  Ex. 12 at pp. 1-2.

      Finally, Petitioner argues that the parole board denied his parole in retaliation for filing grievances in violation of his rights under the First Amendment.  Petitioner filed a grievance against Teri Fighter, Assistant Resident Unit Supervisor (ARUS) of the Pine River Correctional Facility, to modify the incorrect information in his Parole Eligibility Report.  Ms. Fighter allegedly stated "I feel that the Parole Board needs to know that you stood by and watched your Co-Defendant rape a 77 year-old woman and did absolutely nothing to stop it."  Petitioner argues that he was not charged with criminal sexual conduct.  In his parole board interview with James Quinlan on

---

not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

November 7, 2005, Mr. Quinlan allegedly stated that Petitioner "needed to quit filing grievances, take more responsibility for my [sic] actions and quit trying to make people believe that you [sic] were not there."  Ex. 12 at p. 5.  Petitioner alleges that his Step II grievance was sent to the parole board a few days before he received a twelve month continuance.  *Id.*

Petitioner requests that he be released on bail pending the Court's decision.

II.      Section 2241

Petitioner filed his application for habeas relief under 28 U.S.C. § 2241.  Section 2241 authorizes district courts to issue a writ of habeas corpus to a state or federal prisoner who is being held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Section 2254 is more specific and confers jurisdiction on district courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  It is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one.  *See Edmund v. United States,* 520 U.S. 651, 657 (1997); *Prieser v. Rodriquez,* 411 U.S. 475, 488 (1973) (holding that a prisoner challenging the validity of his confinement on federal constitutional grounds must rely on federal habeas corpus statutes, which Congress specifically designed for that purpose, rather than the broad language of Section 1983).  That is, if a state prisoner is "in custody pursuant to the judgment of a State court," his petition is subject to § 2254.  Thus, the procedural requirements applicable under § 2254 also apply to petitions brought pursuant to § 2241.  *Greene v. Tenn. Dep't of Corr.*, 265 F.3d 369, 371 (6th Cir. 2001); *see also* Rule 1(b), RULES GOVERNING § 2254 CASES.

- 4 -

III.    Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner cannot raise his parole denial claims before the state courts.  Pursuant to 1999 statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state law.  MICH. COMP. LAWS § 791.234(9), as amended by 1999 Michigan Public Acts 191, eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim.  Following the lead of the Michigan Legislature, the

Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a).  Recently, the Sixth Circuit Court of Appeals held that a Michigan petitioner's failure to exhaust his equal protection challenge to parole procedures is excused under 28 U.S.C. § 2254(b)(1)(B)(i) because Michigan law does not provide a state corrective process for such a claim.  *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005).  However, certain types of parole denial claims involving radical defects in legal process may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus. *Id.* at 621; *see also Morales v. Mich. Parole Bd.*, 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003).

Consequently, because state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy in which to exhaust his claims. Even if he did have a method to challenge the decision, such as a state writ of habeas corpus or mandamus, *see Morales*, 676 N.W.2d at 229-30,  this Court may still deny his action on the merits. *See* 28 U.S.C. § 2254(b)(2).

IV.   Procedural Due Process

Petitioner claims that he was denied parole in violation of his procedural due process rights because (i) he has a liberty interest in parole after receiving a score of "high probability of parole" on his MDOC Parole Guidelines Scoresheet and (ii) the parole board denied Petitioner's parole after considering false information.  The Fourteenth Amendment forbids state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a liberty or property interest, and (2) the procedures afforded to protect that interest were

insufficient. *Barrett v. Steubenville City Sch.,* 388 F.3d 967, 971 (6th Cir. 2004). Petitioner fails to raise a claim of constitutional magnitude. Petitioner has no liberty interest in parole. Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see also Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the parole board. *See Allen*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the parole board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991).

In numerous cases, this Court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the parole board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the parole board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, 791.234, 791.235. No statutory provision requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(9).[2]

---

[2] The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the court. Release on parole has always been discretionary under Michigan law.

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993) *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his twenty year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right. *Gavin v. Wells,* 914 F.2d 97, 98 (6th Cir. 1990). In the absence of a liberty interest, Petitioner fails to state a claim for a violation of his procedural due process rights.

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board.") Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165. This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board. In an unpublished decision, the Sixth Circuit found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dallman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest). In *Carnes v. Engler*, No. 03-1212, 2003 WL 22177118, *1 (6th Cir. Sept. 19, 2003), the plaintiffs argued that the Michigan parole scheme created a liberty interest in parole because it places severe restrictions on the board's discretion to grant or deny parole, and because it requires the board to provide "substantial and compelling reasons" for

- 9 -

departing from the parole guidelines.  *See* MICH. COMP. LAWS § 791.233e(6).  The Sixth Circuit rejected the plaintiffs' arguments, holding that "the ultimate authority to grant parole still lies with the discretion of the parole board."  *Carnes*, 2003 WL 22177118, at *1.  Because Petitioner has no liberty interest at stake, his procedural due process claim that he has a liberty interest in parole fails.

      Finally, Petitioner claims that the parole board relied on false information to deny his parole.  He claims that the parole board relied on inaccurate information in his August 11, 2005 Parole Eligibility Report and his September 2005 MDOC Parole Guidelines Scoresheet.  Assuming that the parole board did rely on false information, Petitioner's claim does not present any constitutional violation.  *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).  Because Petitioner has no liberty interest in being paroled, Petitioner cannot show that the false information was relied upon to a constitutionally-significant degree.  *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695, at *2 (6th Cir. Mar. 14, 1986).  Therefore, Petitioner fails to state a claim for a violation of his due process rights.

      V.    <u>Substantive Due Process</u>

      Petitioner argues that he has been denied substantive due process by arbitrary actions of the parole board.  To the extent that Petitioner argues that the parole board refused to follow state law, specifically MICH. COMP. LAWS § 791.233e(6), such a claim is not cognizable in a federal habeas corpus action.  A federal court may not issue a writ of habeas corpus "on the basis of a

perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41(1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).

        To the extent that Petitioner presents a federal constitutional claim, his claim is without merit. Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n. 2 (3d Cir. 1980), Petitioner does not set forth any facts for such claim in his petition. *See Mayrides v. Chaudhry*, No. 01-3369, 2002 WL 1359366, at *2 (6th Cir. June 20, 2002) (considering substantive due process claim in context of parole). Petitioner states that he was arbitrarily denied parole based on the "subjective characterizations" of a parole board member, such as Petitioner "failed to accept responsibility," showed "no remorse" and needed "a more detailed [Relapse Prevention Plan]." Pet.'s Br. at 21. In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Petitioner must show that the parole board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *See id.* at *2 (citing *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled on other grounds by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)). Clearly, in this case, it cannot be said that the actions of the Michigan Parole Board in denying Petitioner release on parole either shock the conscience or constitute an "egregious abuse of governmental power." *Id.* at 950. Petitioner's sentence was imposed for armed robbery and first-degree home invasion. In its Notice of Decision, the parole board found that Petitioner failed to show remorse or accept responsibility for his actions. In concluding that Petitioner continues to represent a risk to society if released, the parole board cannot reasonably be considered to have committed an egregious abuse of governmental power.

- 11 -

Consequently, Petitioner has failed to assert a constitutional claim cognizable in a federal habeas proceeding.

     VI.   <u>Retaliation</u>

     Petitioner alleges that the parole board retaliated against him by denying his parole after he filed a grievance against ARUS Fighter to correct his Parole Eligibility Report. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Petitioner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Respondent's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

     Although the filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), and the denial of parole is an adverse action, Plaintiff fails to satisfy the causation element required by *Thaddeus X*. Petitioner alleges that he was denied parole for filing grievances against ARUS Fighter because she refused to correct the wording of Petitioner's Parole Eligibility Report. In his parole interview, Mr. Quinlan supposedly stated that Petitioner "needed to quit filing grievances, take more responsibility for my [sic] actions and quit trying to make people believe that you [sic] were not there." Ex. 12 at p. 5. When denying parole, the parole board considers numerous

- 12 -

factors including the nature and seriousness of the crime, any prior criminal history, the prisoner's institutional conduct, and the prisoner's potential for committing further crimes.  In its Notice of Decision, the board stated that "[Petitioner] fails at interview to accept responsibility for the significant personal injury inflicted upon his victim.  He fails to show remorse or concern for his victim other than to say 'it was a life changing event.'"  In its Case Summary Report, the Michigan Parole Board also noted that "[Petitioner] shows no insight in [Co-Defendant's] behavior or his failure to intervene. [The Pre Sentence Investigation Report] would indicate [Petitioner] should have known that an assault was taking place and should have intervened to help this 77 year old [victim]. (Not used as a reason.)"  Ex. 23.  Mr. Quinlan's comments and the parole board's decision correctly considered that Petitioner needs to take responsibility for his actions.  *See* Ex. 11. Petitioner therefore fails to establish a casual connection between his protected conduct and his parole denial. Accordingly, Petitioner fails to establish a First Amendment retaliation claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because his claims challenging the denial of his parole are without merit.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that

an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of N.Y.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *See id.*

- 14 -

The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated:   August 2, 2006         /s/ Robert Holmes Bell
                                Robert Holmes Bell
                                Chief United States District Judge

- 15 -